4-11-0-3-7-0. Counsel, please. Good morning. I'd like to please the court, counsel. My name is Randy Wolter. My firm represents Brett Hill. When Dr. Twan performed the open procedures on Mr. Hill in January and September of 07, when he found what he referred to as a major rotator cuff tear in the right shoulder, and eight months later, what he referred to as a massive rotator cuff tear in the left shoulder, and also bilaterally damage to the bicep and frayed bicep tendons. It certainly doesn't appear, looking at the operative notes that we're talking about, something that's congenital or the result of age. It looks like it's your standard rotator cuff that's developed over a period of time of doing significant labor. So the question here is what really happened to Mr. Hill? What do we know about him? First thing we know is that he has a type 2 acromion, which is the most common. That's the bone in your shoulder. It doesn't move. It doesn't cause problems. It only is involved in rotator cuff issues when you're using arms in a manner where the muscles are rubbing against it and being destroyed over a period of time. We know that rotator cuff injuries are normally the result of a process. They don't heal. They don't get better, and they normally come over a period of time. So how does this fit in with Mr. Hill? Well, we know that before December of 02, he didn't have any restrictions, no pain in his shoulders. When we took this months, he handled somewhere close to a half a million 50-pound bags, often over his head as he put them on a pallet. That changed after nine months when he changed his position and was handling maybe up to 200 bags per day. And that changed when the job was automated in June of 04. But the key here is that he first starts complaining of pain in 03 and tells Dr. Scribner on two occasions in 04 that he's having a pain in his shoulder, and Dr. Scribner attributes that to his work-related injuries. For us who read a lot of medical records, although the respondent has made a significant issue about the histories that Mr. Hill gave his doctors, we find them to be amazingly consistent. The histories he the radiologist who does his MRI report, the physical therapist, are all the same except for one I'm going to talk about, but in general they're the same. He talks about his work, what he used to do, when his pain started in his shoulder, and all of this is consistent with the job that he had at the respondent, particularly in the first nine months that he worked there. The only one that's a about Dr. Scribner. He's sort of been eliminated from their assessment of the case. This is the first doctor we saw as early as 04 is reporting pain in his shoulders, which Dr. Scribner attributes to work, same as Dr. Twan does. The only two treating physicians in this case both agree that this is a work-related injury. There's no question he's got bilateral severe rotator cuff problems, not only by diagnosis and MRI, but as a result of the findings. Before the arbitrary commission, which theory did you proceed in? Did you proceed in the theory this was an aggravation or acceleration of a pre-existing condition, or what was your theory? The theory was no. Our theory is the injury was caused by work. He had no symptoms prior to December of 03. If you look at his medical records, it seems clear that what happened is by the end of nine months, he's already hurt. He's in pain. For all we know, he had complete rotator cuff affairs at that time. His responsibilities are decreased a little bit, which probably helped him bear the pain. And in June of 04, it happens again. And what did Dr. Fletcher opine? Well, he opines that it's a congenital condition. But let's talk about Dr. Fletcher, because he's the outlier in this case. He happens to be the one the commission decided to rely on. That's why we're here. Right. I don't know how many times you see Dr. Fletcher, and I don't know how you can be paid by someone to be objective, but I know it's got to do with this case, because the basis of his opinion is just wrong. He states that Mr. Hill had prior left shoulder surgery. That's wrong. He says he didn't complain of any symptoms prior to the automation. We know that's wrong. He said the injury occurred after the automation. We know that's wrong. I mean, none of that stuff is true. So not only do we think there's insufficient evidence to support the commission's decision, we don't think there's any evidence. And it's contrary to the only two treating positions that we have were consistent. Well, the claimant testified that he didn't have any symptoms until after the partial automation. It was that he was working as a hand factor. Okay. I don't think that's right. No. And I think his testimony's been the same, and it's even in Dr. Scribner's record. That's why Dr. Scribner is so critical. And it's right in his records. He's there in May of 2004 and maybe October of 2004 complaining of other issues, but he's also complaining of bilateral shoulder pain. But he became a hand factor in September of 2003. Right. And that reduced the number of bags he was handling, both in total and over his head. Both that decreased. Right. And he testified about two or three months after he started working as a hand factor is when he began experiencing symptoms. Okay. And I don't remember the testimony. I just know that in Scribner's notes it goes back even further. That even in those first nine months when he's handling up to 2,500 of those bags each 12-hour shift, he's already got pain in his shoulder. So, I mean, what it looks like what happened is he gets hurt in the first nine months or shortly worse and worse. He gets to a spot where he's not having to do it as much. Then another spot where it becomes even less. But even when it's automated, which is another thing Fletcher gets wrong. I mean, he says this guy just pushes a button. Well, first of all, that's not true the first nine months. It's not true the second job. Even when it's automated, he's still handling up to 100 bags a day when the automated process is having problems. Plus, Dr. Twan testified that once you get to the point where he's got this kind of injury, just lifting the bag is going to aggravate the problem. But he's had the problem for years. It didn't start in 06 or 07 or even after the automation. Was the problem that Dr. Twan was under the impression that he was doing this lifting all the time throughout this entire treatment period? That may be. So, I mean, then it becomes a problem that what you're expressing is your theory of the case that he got injured early on and then continued to have that injury. No physician testified based on that scenario or those facts. Is that a fair statement? I think that's a fair statement, but I don't know that it means much. First, we've got Scribner's records, and his records are clear. That's why he wasn't opposed to writing the records. And Dr. Twan, I don't think his testimony would change if you just changed the dates. I mean, what he says is what this guy told me he did. It was a common cause of rotator cuff. And he was talking about what he did two or three years early. Starting in 03, sure. I mean, I don't think there's any question that this all started when he's handling all those 50-pound bags for nine months. In fact, if we lose this case, this gives the employer a chance. Oh, here's what we'll do. Somebody's got a shoulder injury. Let's give them an easier job for a couple years so he can't come back and blame what he was doing when he first came to work for us. I mean, it's too bad that he didn't have an MRI maybe in 04 or 05, but we can't change that. On the other hand, if Dr. Twan would have clearly understood what the sequence of events were in his job before he expressed his opinions, that might have carried more credibility. Yeah. But again, first of all, what he says in there, yeah, it's true. For some reason he believed, it appears, that he was still handling all these bags. But I don't think it changed the import of his testimony that it's handling all these bags that caused this kind of injury. Plus, there's no other suggestion of what caused the injury. Well, it was a unanimous commission decision, right? I think it was. And it was Camuno, Gore, and Berserker. They're not exactly all employer-related commissions. Well, you know, counsel may explain this to you, but I don't get it. Because we only have two treating physicians, and they agree. The progress of his injury and the definition of a rotator cuff injury are so consistent that there's been no other suggestion as to how this could have happened. He's not that old. No suggestion he's using his arms or over his head doing anything at home or any other place. Well, let me ask you sort of a blunt question. I understand your argument about the doctors. Ultimately, the question is whether there's evidence in the record to support the commission's decision. You have Fletcher on one hand, you have your doctors on the other. So tell us why they just can't believe Fletcher. All right. First of all, Fletcher concludes it's a congenital lower age problem. To me, that stretches the credibility of the doctor. Credibility beyond the breaking point. Why? Well, because look at the operative report and what they found. He's got frayed bicep tendons. He's got full, massive rotator cuff tears. He's got bicep injuries. The muscles are retracting. I mean, this is what rotator cuff injuries are. It's traumatic over a period of time. That's why it's consistent with his testimony and what the doctor said. That's just one thing. I mean, Fletcher's whole testimony is based on his assumption that the injury happened after automation, which isn't true. It's based on his assumption that after automation, he didn't handle the bags anymore. That's not true. I think Fletcher acknowledged that complainants were continuing to involve some overhead lifting. I mean, I don't think Fletcher gave an opinion thinking he never did any lifting, did he? Yeah. I mean, he calls him a button pusher in his testimony. And to go back to the job, because all he did was push a button. And I agree, it's nowhere near what it was at the beginning. But the injury didn't start then. The injury started back at the beginning. And the reason it maybe didn't come up faster is because they did cut back on what his responsibilities are. But he shouldn't be punished for that. He's still handling the bags, just not as often. And the other thing in Fletcher, I mean, it's hard to weigh this stuff, but when he gives direct testimony, he thinks he knows this guy. And he thinks this is the guy that's had prior surgery on his left shoulder. He even has the individual wrong. I mean, he's the winner. The treating physicians know who my guy is. Fletcher didn't even know who he was. And were we sitting as the original triers of fact, certainly your argument makes common sense that he must have hurt himself whenever he was lifting all these bags, all these heavy bags. But the question for us is, you know, did the commission have sufficient evidence? And that's where we have to be on that. We can't re-weigh the evidence. We can't just decide it on the evidence. The question is, is there evidence that the director of the departmental medical commission could have made the conclusion they did? And they do have Fletcher say it. It's competing expert testimony. Well, it is. But, you know, we are talking about manifest weight of the evidence. And our position is that the treating physicians haven't said anything that's incorrect or even contradictory. And it's consistent with the job. It's consistent with the injuries. Whereas Fletcher has treated things as facts that aren't true. So on one side of the commission determined that what the claimants said was contradictory to what the doctors said. I mean, I don't know. I don't think there's any contradiction between my client and his treating physicians. I mean, from the time the scrivener sees him in 04, he says he's got bilateral shoulder pain and it's related to his work duties and he's got an accurate description of what the guy's doing every day. I mean, the only outlier, as I said, is Fletcher. It gets back to Twan. I mean, because Twan was under the impression that he was lifting all these bags every day during this whole time period. And the claimant's testimony did contradict that. Yeah. Although, again, I would say this. I mean, Twan doesn't say it's important that he be doing this since 1993. I mean, Twan may be thinking he's been doing this for nine months or a year. So it really doesn't change the fact. If he did it three years ago and hurt himself, it really doesn't make any difference. So I know there's some confusion there. But for someone who reads a lot of medical records with all these different people that have a history and a diagnosis, it's amazingly consistent as to what you normally see. So, you know, I don't know why the year and a half is in there, but, again, I just don't think it's critical. And I think when you look at the ledger in a way, the consistency, the job duties, what happens in Rotator Cuff, how you get that injury, versus the evidence given by Fletcher, who has all these incorrect assumptions, that we're past the threshold. And we think the arbitrary decision, which looks at more of these issues, is the best one. Unfortunately, that one's gone. But for those reasons, we ask that you reverse the definition. Thanks. Counsel, please. Please, the Court. Counsel Robert Makarowski on behalf of Tate & Lyle. I've heard this argument before, before the full commission. Counsel is re-arguing the facts and asking you to be the initial trier of fact. I think, Judge Stewart, I think you correctly set forth how this case should turn out and why it's going to turn out the way it is. There was conflicting testimony about the job. We know he started in December of 2002, and that was the more physical demanding of his job. About 30% of his time he did spend working with bags overhead. That's when it got to the 8th, 9th, 10th layer. He received no treatment during that period of time, made no complaints, then went to another job for nine months. And that job did not require the degree of lifting. In fact, you slid the bag unless there was some short weights. And during that period of time, and Counsel didn't mention this, but in November of 2003, he had his gastric bypass surgery, and he was off for a period of time for that. Then went to Dr. Scribner in May of 2004, and the petitioner said, I've had these symptoms for six months. Well, if you take six months from that date, you're to the bypass surgery. And the doctor didn't have any detailed knowledge as to his job. He assumed that what the petitioner was telling him was true, that he was doing repetitive, continuous overhead work. He then went to the automated job in June of 2004, and the petitioner testified, and it's in the record, I think it's pages 509 to 512, as to the automation, the fact that he sits before a panel and basically pushes buttons. And on occasion there are bags. I think he said sometimes it varied from 5 to 100. Now, Dr. Twan, and again, Judge, I think you correctly pointed this out, Dr. Twan, when he testified, testified that his understanding was that he continued to do repetitive lifting overhead to this date, and he was referring to December of 2006. Dr. Twan did admit that people with type 2 acromiums have a high percentage of rotator cuff tears. He did admit in his testimony that rotator cuff tears don't just occur by work activities, unknown causes. And Dr. Fletcher, in his testimony, actually had an opportunity to look at the job and look at all the various jobs that the petitioner described, and felt that his condition, based on the MRI, and if you look at the MRI, it identifies a type 2 acromium. He felt that it was a degenerative process, was related to the type 2 acromium, and mentioned the fact that people who go through gastric bypass surgeries, and that's when his initial complaints really date back to, have this problem. The commission, in this case, found Dr. Fletcher more credible. Just talking about the surgery and what they found, what they found in that surgery, and no one testified. So, you know, it's my argument versus counsel. There's no medical opinion. Those findings weren't inconsistent with the degenerative process or something that was caused or contributed to by the gastric bypass. The commission chose to believe Dr. Fletcher in this case. They found him to be more credible. They felt that Dr. Twan's testimony was contradictory to what the petitioner said it was. What he understood the job to be in December 2006 wasn't the job. It's their job to look at the conflicting medical evidence and to weigh that and to choose which physician is correct. What about the argument this aggravated with the existing condition? That the commission did not find. Dr. Fletcher didn't feel was an aggravation. And he blamed it on the degenerative process, and the commission, and the three people that the judge mentioned decided this case. The commission finds the testimony of Dr. Fletcher to be more persuasive in regard to whether the petitioner's condition of ill-being is the result of a working accident. Dr. Twan received the history from the petitioner, was undertaken repetitive job duties above shoulder level at the time he saw him in December 2006. The petitioner's own testimony contradicts that history. They get to pick which doctor to believe. You can't retry the case, and I think that's what the argument's about, and look at the evidence again and come up, even if you were to agree that it should be a different decision, that's not something that you're supposed to be doing. I think in this case the commission was the trier of fact. They had the right to pick and choose which physician's opinion they were going to adopt and accept. They did, and I think that this court should affirm the industrial commission's decision. Any questions? Thank you, counsel. Thank you very much. Rebuttal, please. Counsel, I have a question for you. Why shouldn't we find all of the issues that you've raised on appeal way for failure to cite authority in violation? You should stand up for this. For failure to cite any authority in support of the arguments you've made, not a single case cited here. Well, we don't disagree with the application of the law in this case. We were looking just at what the evidence was at trial. I know what our burden is here today. No citation of authority to what our standard of review was supposed to be, no citation of authority to any of these arguments. And, you know, the penalty for that, according to this Supreme Court rule, is forfeiture. Well, again, I mean, we understand what our burden is here and I didn't see any reason to cite cases because we're not making a legal argument here. We know what our burden is. Right, but that wouldn't necessarily excuse this, and part of this is guidance for the future. I mean, I think technically you could be forfeited for that, so keep that in mind. No, I understand. You know, the gist of this, I guess, is whether you're going to look back at what happened in 93 and 94 and 95 or whether you start with what Dr. Fletcher did after the automation. I mean, his opinion that this could not be a job-related injury is based on the fact that the job was automated and all this gentleman had to do was push buttons and on occasion pick up bags that were getting stuck or, which were the wrong way, start the process over with them, which at most was 100 bags a day. But it ignores everything that happened in 03. It ignores the period of time where he lifted hundreds of thousands of 50-pound bags. It ignores completely, they still haven't mentioned Dr. Scribner. I don't know how they make him disappear. In 04, he's saying that this gentleman has bilateral shoulder injuries and it's related to work. So why do we even have to ask Dr. Fletcher about that? And Dr. Twan's testimony is consistent. What he says is, well, first of all, we know that by the end of 06, the start of 07, we've gotten some massive injuries. What does Dr. Twan say about the 100 pounds or the 100 bags instead of 2,500 bags? He says, well, lifting any bag, any weight when you're that kind of injury is going to aggravate the problem. But we just think if you look at the whole picture that it is clear that this injury started when he was doing all this heavy work with a lot of overhead lifting, continued to get worse, never got better. There's no questions what the injuries are. It's consistent with the rotator cuff injury. The histories my client gave to all those people, the radiologists, the doctors, the physical therapists, was consistent throughout. And as I said, the basis for Dr. Fletcher just doesn't exist. There was no previous left shoulder surgery. He wasn't just a button pusher. This is not an injury which first appeared or symptoms didn't first appear after automation. All that stuff is incorrect. The only doctors who had the complete history, did their own evaluation, diagnosis, performed the surgery, all agree this is a work-related injury. So that's the reason we think it should be overturned. In the future, we'll cite a case that tells us what our burden is. Thank you. Thank you, John. So the court will take the matter under advisement for disposition.